**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 2:13-cr-20142-SHM-13** |
| ) | |
| ) | |
| ) | |
| ) | |
| **DAMIEN HUGHES,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| ) | |

**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE**

Before the Court is Defendant Damien Hughes's pro se Motion for Reconsideration of the Court's denial of his original motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) (the "Motion"). (D.E. Nos. 574, 575, 564.) The government responded on December 15, 2020. (D.E. No. 577.) For the following reasons, the Motion is **GRANTED.**

**I.   BACKGROUND**

In April 2013, Hughes was indicted for conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. § 846. (D.E. No. 3.) In January 2014, Hughes pled guilty. (D.E. No. 325.) On August 27, 2014, this Court sentenced Hughes to 127 months in prison to be followed by three years of supervised

release. (D.E. No. 461-62.) Hughes's current release date is October 19, 2022. See Bureau of Prisons, Inmate Locator Utility, "Damien Hughes," www.bop.gov/inmateloc (last accessed Jan. 21, 2021).

Hughes initially filed for compassionate release on May 27, 2020. (D.E. No. 564.) The Court denied his original motion on June 22, 2020, because there were no cases of COVID-19 in Hughes's facility and because Hughes has a significant criminal history. (See D.E. No. 569.)

Since the Court denied Hughes's original motion, he has written two letters asking the Court for a decision. He submits new information to assist the Court. (See D.E. Nos. 574, 575.) The Court construes Hughes's subsequent letters as a motion for reconsideration. Hughes submits that there has been an outbreak of COVID-19 at his facility since his original motion and that the outbreak puts him at risk. (D.E. No. 575.) He submits that he has participated in the Residential Drug and Alcohol Program ("RDAP") at his facility. (Id.)

The government responded to Hughes's Motion on December 15, 2020. (D.E. No. 577.) The government argues that Hughes is as likely to contract the virus that causes COVID-19 outside his facility as he is in the facility. (Id. at 1467.) The government also argues that the Court should deny the Motion because the

2

Court has previously determined that the 18 U.S.C. § 3553(a) factors weigh against compassionate release. (Id. at 1468.)

## II.   STANDARD OF REVIEW

A sentencing court does not have inherent authority to modify an otherwise valid sentence. United States v. Washington, 584 F.3d 693, 700 (6th Cir. 2009).  The authority to resentence a defendant is limited by statute.  United States v. Houston, 529 F.3d 743, 748-49 (6th Cir. 2008) (citing United States v. Ross, 245 F.3d 577, 585 (6th Cir. 2001)).

Eighteen U.S.C. § 3582(c)(1)(A) allows a court to modify a term of imprisonment where "extraordinary and compelling reasons warrant [modification]."  "Although relief under the statute is commonly referred to as 'compassionate release,' such relief is not limited to immediate release, but includes a reduction in sentence." United States v. Marks, 455 F. Supp. 3d 17, 21 n.3 (W.D.N.Y. 2020). "The compassionate release provisions were . . . intended to be a 'safety valve' to reduce a sentence in the 'unusual case in which the defendant's circumstances are so changed, such as by terminal illness, that it would be inequitable to continue the confinement of the prisoner.'" United States v. Ebbers, 432 F. Supp. 3d 421, 430 (S.D.N.Y. 2020) (quoting S. Rep. 98-225, at 121 (1983)).

In the First Step Act of 2018 (the "First Step Act"), Pub L. No. 115-391, 132 Stat. 5194, 5239, Congress amended 18 U.S.C.

3

§ 3582(c)(1)(A) to allow a prisoner to file a motion for compassionate release.  Before the First Step Act, a motion for compassionate release could be brought only by the Director of the Bureau of Prisons (the "BOP").  United States v. York, Nos. 3:11-cr-76, 3:12-cr-145, 2019 WL 3241166, at *4 (E.D. Tenn. July 18, 2019) (citing 18 U.S.C. § 3582(c)(1)(A) (2017)).  The First Step Act modified § 3582(c)(1)(A) with the intent of "increasing the use and transparency of compassionate release."  Pub. L. No. 115-391, 132 Stat. 5194, 5239 (capitalization omitted); see also Ebbers, 432 F. Supp. 3d at 430.

Section 3582(c)(1)(A) now provides that:

[T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that —-

(i) extraordinary and compelling reasons warrant such a reduction . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Section 3582(c)(1)(A) requires a defendant to exhaust available administrative remedies with the BOP before seeking judicial relief.  See United States v. Alam, 960 F.3d 831, 832-34 (6th Cir. 2020).  A defendant may exhaust his administrative

remedies in one of two ways: (1) by exhausting "all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or (2) on "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The defendant bears the burden of showing he has exhausted his administrative remedies and is entitled to compassionate release. See Ebbers, 432 F. Supp. 3d at 426-27 (citing United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992)). Section 3582(c)(1)(A)'s exhaustion requirement is a mandatory claim-processing rule that is subject to waiver and forfeiture. See Alam, 960 F.3d at 834 (citing United States v. Cotton, 535 U.S. 625, 630 (2002)).

Congress directed the United States Sentencing Commission, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, [to] describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t); see also 28 U.S.C. § 994(a)(2)(C).

The Sentencing Commission has published a policy statement in the United States Sentencing Commission Guidelines Manual (the "U.S.S.G."), addressing the standards for compassionate release. See U.S.S.G. § 1B1.13 (the "Policy Statement"). That

Policy Statement is not "applicable" to a motion for compassionate release filed directly with a court by a defendant. United States v. Jones, 980 F.3d 1098, 1111 (6th Cir. 2020) ("[F]ederal judges . . . have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); United States v. Brooker, 976 F.3d 228, 236, (2d Cir. 2020) ("Because Guideline § 1B1.13 is not 'applicable' to compassionate release motions brought by defendants, Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling."); United States v. Beck, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019) ("There is no policy statement applicable to motions for compassionate release filed by defendants under the First Step Act. By its terms, the old policy statement applies to motions for compassionate release filed by the BOP Director and makes no mention of motions filed by defendants."). The only statutory limit on the sentencing court's authority to determine what is an extraordinary and compelling reason is that "[r]ehabilitation of the defendant alone shall not be considered" such a reason.  28 U.S.C. 994(t); United States v. Rodriguez, 451 F. Supp. 3d 392, 396 (E.D. Penn. 2020) ("Congress never defined the term 'extraordinary and compelling reasons,' except to state that '[r]ehabilitation ... alone' does not suffice.").

6

Nevertheless, the Policy Statement applicable to motions brought by the BOP provides a helpful starting point for the extraordinary and compelling reasons analysis. United States v. Kolodesh, --- F. Supp. 3d ---, ---, 2020 WL 5292145, at *2 (E.D. Penn. Sept. 4, 2020) ("As many courts have noted, the Sentencing Commission's policy statements 'provide[] helpful guidance' when considering a motion for compassionate release."); United States v. Andrews, --- F. Supp. 3d ---, ---, 2020 WL 4812626, at *5 (E.D. Penn. August 19, 2020) (same); United States v. Burnside, 467 F. Supp. 3d 659, 664 (N.D. Iowa 2020) (same); Rodriguez, 451 F. Supp. 3d at 397 ("[A] majority of district courts have concluded that the old policy statement provides helpful guidance, [but] ... does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A).") (alterations in original) (internal quotations omitted); Beck, 425 F. Supp. 3d at 579 (same).

The Policy Statement reiterates that a court may reduce a term of imprisonment under § 3582(c)(1)(A) if "extraordinary and compelling reasons warrant the reduction" and "after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable." Id. The Policy Statement also directs courts to determine that "the defendant is not a danger to the

7

safety of any other person or to the community," before reducing a term of imprisonment under § 3582(c)(1)(A).  Id.

The commentary to the Policy Statement describes four categories of "extraordinary and compelling reasons" that may justify compassionate release under § 3582(c)(1)(A): (A) the medical condition of the defendant; (B) the age of the defendant; (C) family circumstances; and (D) other reasons. See U.S.S.G. § 1B1.13, cmt. n.1(A)-(D).  The "other reasons" category allows compassionate release if, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." Id. cmt. n.1(D).

The Court must weigh the relevant § 3553(a) factors before reducing a prisoner's sentence.  18 U.S.C. § 3582(c)(1)(A) ("[T]he court . . . may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable"); Alam, 960 F.3d at 832 ("After 'considering the factors set forth in section 3553(a),' a court may reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction'").

To qualify for compassionate release, a defendant must: (1) have exhausted administrative remedies; (2) present an

8

extraordinary and compelling reason for release; and (3) withstand a review of the § 3553(a) sentencing factors.

## III. ANALYSIS

### A.  Exhaustion of administrative remedies

Hughes has exhausted his administrative remedies. (D.E. No. 569 at 1399.) The government does not contest that Hughes's administrative remedies have been exhausted. (See D.E. No. 577.)

### B.  Extraordinary and compelling reason

In reviewing a motion for compassionate release, a court must address whether "extraordinary and compelling reasons warrant [] a reduction." 18 U.S.C. § 3582(c)(1)(A). The "extraordinary and compelling" standard is a high bar even under the current circumstances of the COVID-19 crisis. An "extraordinary" circumstance is one that is "beyond what is usual, customary, regular, or common." "Extraordinary," Black's Law Dictionary (11th ed. 2019). A "compelling" circumstance presents "a need so great that irreparable harm or injustice would result if it is not met." "Compelling Need," Black's Law Dictionary (11th ed. 2019). COVID-19 is an extraordinary event in and of itself, but "the mere existence of COVID-19 in society and the possibility that it may spread to a particular person alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

Courts using the Policy Statement as a starting point for analysis have relied on one of two bases to find extraordinary and compelling reasons. Some courts that have granted motions for compassionate release due to COVID-19 have reasoned that defendants with serious underlying health conditions who face a significant risk of contracting COVID-19 satisfy the Policy Statement's "medical condition of the defendant" category for compassionate release because those defendants are unable to "provide self-care" effectively and protect themselves from the virus while in prison. See, e.g., United States v. Amarrah, 458 F. Supp. 3d 611, 618 (E.D. Mich. 2020) (granting compassionate release where defendant had diabetes, heart disease, and asthma and would be unable to "provide self-care within the environment of a correctional facility" were he to contract COVID-19). Other courts have reasoned that defendants who demonstrate that they are at significant risk both of contracting COVID-19 and of experiencing a severe reaction to it meet the requirements of the Policy Statement's "other reasons" category for compassionate release. See, e.g., Rodriguez, 451 F. Supp. 3d at 394, 401-07 (granting compassionate release for "other reasons" where defendant had diabetes, hypertension, and liver abnormalities, was in a facility that had insufficient testing and sanitation, and was "close to his release date").

10

In assessing whether and when defendants have presented extraordinary and compelling reasons for release due to COVID-19, courts have considered whether a defendant has demonstrated "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." United States v. Feiling, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020) (collecting cases); compare Miller v. United States, 453 F. Supp. 3d 1062, 1066-67 (E.D. Mich. 2020) (granting compassionate release where defendant was 69 years old, had multiple serious medical conditions, and was in a facility with a substantial number of COVID-19 cases), with United States v. Gold, 459 F. Supp. 3d 1117, 1119-20 (N.D. Ill. 2020) (denying compassionate release where defendant had "common" medical conditions that were not "among those the CDC has identified as significant risk factors" for COVID-19 and defendant's facility had "no confirmed cases of COVID-19").

Given those approaches, courts evaluating motions for compassionate release have considered factors like the defendant's age; the defendant's medical condition; whether the defendant's current facility has many COVID-19 cases; whether the defendant's facility is capably managing and treating the COVID-19 cases it has; and how much of the defendant's sentence remains to be served. See, e.g., United States v. Zukerman, 451 F. Supp. 3d 329, 335-36 (S.D.N.Y. 2020) (granting compassionate

release where defendant was seventy-five years old and suffered from diabetes, hypertension, and obesity, placing him at "higher risk for severe illness from COVID-19"); United States v. Atwi, 455 F. Supp. 3d 426, 426-27, 430-32 (E.D. Mich. 2020) (granting compassionate release where defendant had latent tuberculosis and was in a facility where "[m]any inmates and staff members . . . have been diagnosed with [COVID-19]"); United States v. Mazur, 457 F. Supp. 3d 559, 562-64 (E.D. La. 2020) (denying compassionate release where defendant had leukemia and hypertension and was at a facility that has had a substantial COVID-19 outbreak, but had twenty-five percent of his sentence remaining and had not shown that his facility was "failing to take precautions to combat the spread of COVID-19"); United States v. Perez, 451 F. Supp. 3d 288, 293-94 (S.D.N.Y. 2020) (granting compassionate release where defendant was "in weakened health" and had "weeks left on his sentence").

When considering whether health conditions that might interact with COVID-19 create an extraordinary and compelling reason for compassionate release, courts rely on Centers for Disease Control and Prevention ("CDC") guidance. On July 17, 2020, the CDC updated its guidance on medical conditions that put people at higher risk of reacting severely to COVID-19. The CDC's updated guidance lists some medical conditions, like cancer, chronic kidney disease, and sickle cell disease, that

definitely put people at higher risk, and some, like asthma and hypertension, that might put people at higher risk. <u>See</u> Centers for Disease Control and Prevention, People Who Are at Increased Risk for Severe Illness: People with Certain Medical Conditions, www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people -with-medical-conditions.html.

Since the CDC's guidance was released, courts have found extraordinary and compelling reasons where defendants had medical conditions that definitely put them at a higher risk of a negative outcome if they contracted COVID-19. <u>See, e.g.</u>, <u>United States v. Owens</u>, No. 2:13-cr-00073, 2020 WL 6162783, at *4 (S.D.W. Va. Oct. 21, 2020) (finding defendant with two conditions on the list of certain higher risk presented extraordinary and compelling reason where there was a risk of infection at facility); <u>United States v. Reddest</u>, No. 5:05-CR-50116-01-KES, 2020 WL 6044071, at *4 (D.S.D. Oct. 13, 2020); <u>United States v. McKinney</u>, No. 3:15-cr-208, 2020 WL 5642113, at *2 (N.D. Ohio Sept. 22, 2020). Courts have found that conditions that might increase the risk of negative outcomes were too speculative to be extraordinary and compelling. <u>See, e.g.</u>, <u>United States v. Barnett</u>, No. 2:18-cr-00131-RAJ, 2020 WL 6219358, at *4-5 (W.D. Wash. Oct. 22, 2020); <u>United States v. Alejo</u>, No. CR 313-009, 2020 WL 6122528, at *1 (S.D. Ga. Oct. 16, 2020) ("[T]he Court cannot conclude that the 'might' category qualifies an illness

as sufficiently serious to warrant compassionate release in and of itself.").

Hughes seeks compassionate release under 18 U.S.C. § 3582(c)(1)(A). (D.E. Nos. 574, 575.) He asserts that he presents extraordinary and compelling reasons for release because of his medical conditions. (Id.) Hughes asserts that his medical conditions include blastomycosis and a compromised immune system due to a splenectomy.[1] (Id.) Hughes submitted corroborating medical records with his original motion. (See, e.g., D.E. Nos. 564-10, 564-11.) Hughes has only one kidney and a history of chronic kidney disease, which the CDC has determined definitely puts people at higher risk.

The Court has previously determined that Hughes is at higher risk for a negative outcome should he contract COVID-19. (D.E. No. 569 at 1405-07.)

Hughes cites his rehabilitation while in prison. (D.E. No. 575.) Although "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason" for compassionate release, U.S.S.G. § 1B1.13, cmt. n.3, rehabilitation can be a factor in the compassionate release

---

[1] Blastomycosis is a fungal infection of the lungs. (See American Thoracic Society, Blastomycosis, http://www.thoracic.org/patients/patient-resources/resources/blastomycosis.pdf.) A splenectomy is the surgical removal of the spleen. (See Mayo Clinic, Splenectomy Overview, http://www.mayoclinic.org/tests-procedures/splenectomy/about/pac-20395066.)

determination, see, e.g., Rodriguez, 451 F. Supp. 3d at 405. Hughes is enrolled in RDAP. (D.E. No. 575.) He has participated in many programs offered at his institution. (D.E. No. 575.) He has not incurred any infractions during his incarceration and has not "been in any trouble." (D.E. Nos. 574, 575.)

Hughes has served about eighty-one percent (81%) of his sentence. He was sentenced to 127 months in prison, has received a twelve-month reduction in sentence, and has about twenty-one months remaining.

As the government argues in opposition, the BOP has taken substantial precautions throughout the federal prison system to mitigate the spread of COVID-19. See Wilson v. Williams, 961 F.3d 829, 841 (6th Cir. 2020) (noting that the BOP has implemented a phased action plan to reduce the risk of COVID-19 transmission that involves preventative measures such as screening for symptoms, quarantining new inmates, providing masks and cleaning supplies, and conducting testing).

At the time of Hughes's original motion, there were no cases of COVID-19 at his facility. Since, there has been an outbreak of COVID-19 at FCI Morgantown. The BOP reported that there were 120 inmates with active confirmed cases of COVID-19 as of Dec. 9, 2020. See Bureau of Prisons, COVID-19 Cases, www.bop.gov/coronavirus/index.jsp (accessed Dec. 9, 2020). There were only 468 inmates at FCI Morgantown, meaning that more than

15

twenty-five percent of the population had tested positive for COVID-19. See Bureau of Prisons, FCI Morgantown, https://www.bop.gov/locations/institutions/mrg/ (last accessed Dec. 9, 2020). The BOP currently reports sixty-six active cases of COVID-19 among the inmates at FCI Morgantown and seven positive cases among staff. See Bureau of Prisons, COVID-19 Cases, www.bop.gov/coronavirus/index.jsp (last accessed Jan. 21, 2021). This is a material change from the absence of cases when the Court denied Hughes's original motion in June. The spread of the virus at Hughes's facility in December and the number of cases there now create a substantial particularized risk that Hughes will contract the virus. Even given the community spread of the virus outside the facility cited by the government, Hughes faces a higher risk of infection while incarcerated than he would if released. Among other things, he would have increased ability to socially distance if released.

Hughes is at an increased risk of a negative outcome should he contract COVID-19, and there is a particularized risk that he will contract the virus at his present facility. Because of his severe medical conditions, he would be unable to provide self-care, and he cannot protect himself from the virus while in prison. Hughes presents an extraordinary and compelling reason for release under 18 U.S.C. § 3582(c)(1)(A).

## C.   The § 3553(a) Factors

Section 3553(a) requires a sentencing court to consider, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment, to afford adequate deterrence, and to protect the public from further crimes. 18 U.S.C. § 3553(a). The Court has previously concluded that the § 3553(a) factors counsel against compassionate release in Hughes's case, as the government notes. (D.E. Nos. 569, 577.) That conclusion was based, in part, on his criminal history, which includes a conviction for attempted first-degree murder. (PSR ¶¶ 28-37.)

The § 3553(a) factors favor compassionate release based on further consideration and the new information submitted with Hughes's Motion. Hughes presents information that he is participating in RDAP. (D.E. No. 575.) That is a significant indicator of rehabilitation that affects the Court's consideration of Hughes's characteristics and his likelihood to commit further crimes. United States v. Ozoh, No. 17-20432, 2020 WL 6317560, at *3 (E.D. Mich. Oct. 28, 2020) (granting compassionate release after review of the § 3553(a) factors based in part on defendant's ongoing participation in RDAP); United States v. Provost, --- F.3d ---, 2020 WL 4274570, at *6 (E.D. Va. 2020) (granting compassionate release after determining that

17

drug treatment during incarceration indicated rehabilitation that illustrated defendant was no longer a danger to the community); United States v. Robinson, No. 3:10cr261, 2020 WL 4041436, at *6 (E.D. Va. July 17, 2020) (granting compassionate release after determining that completion of RDAP reduced defendant's risk of recidivism). Hughes has had no infractions since he has been incarcerated. (D.E. Nos. 574, 575.)

Hughes was born on June 19, 1980. He is 40 years old. As the Court has said, he has severe health problems.

The count of conviction, conspiracy to possess with intent to distribute cocaine, is serious, but non-violent. Hughes was responsible for distributing approximately 6.5 ounces or 184 grams of powder cocaine. No firearms were associated with the drugs. Hughes pled guilty and accepted responsibility.

Hughes has a significant criminal history. He has a total criminal history score of 12, which establishes a criminal history category of V. Three points are ascribed to his conviction for criminal attempt: first degree murder. Hughes was 15, juvenile court jurisdiction was waived, and he was convicted as an adult in Shelby County Criminal Court at Memphis, Tennessee. Four of Hughes's points are ascribed to convictions for possession of marijuana. Two are ascribed to a conviction for possession of marijuana and crack cocaine. Two are ascribed to a conviction for failure to appear. One is ascribed to a

conviction for possession of marijuana with intent to manufacture/deliver/sell. All of those prior convictions, except the first, were non-violent.

Based on his conviction for criminal attempt: first degree murder and his conviction for possession of marijuana with intent, Hughes was a career offender at sentencing. His adjusted offense level was increased from 20 to 32, and his criminal history category was increased from V to VI. Hughes's sentence of 127 months in custody was below the advisory guidelines range. The sentence was substantially above the range had Hughes not been a career offender.

Hughes has strong family support. He has an acceptable residence and release plan. He has no history of mental or emotional problems, although he has a history of gambling. He has a long history of drug abuse. He began using marijuana when he was 10 and continued to use it daily for 23 years. He has also used promethazine and opiates. Hughes has earned his GED and attended college, studying for a degree in accounting. He is a skilled barber who has worked in a barbershop.

Hughes has served 93 months in custody, which is approximately eighty-one percent (81%) of his sentence as calculated by the BOP.

Hughes's guidelines range was determined in substantial part by his status as a career offender. That status was based

on his conviction of a crime committed when he was 15 and another for which he was sentenced to one (1) day in custody. He has not received criminal history points for any violent crime since 1995.

Hughes has significant educational attainments and a marketable skill. His participation in RDAP is an important step in addressing his chronic drug addiction. Participation in RDAP demonstrates a recognition of his addiction and a desire to overcome it. That is a dramatic change from Hughes's position in 2014 that he did not need substance abuse treatment. Participation in RDAP and the absence of infractions are strong evidence of attempts at rehabilitation that suggest recidivism is unlikely.

The significant time Hughes has served is sufficient to reflect the seriousness of the offense, to provide just punishment, to deter others, and to protect the public. Based on his health conditions, his rehabilitation efforts, his personal characteristics, and a careful reading of his criminal history, Hughes is not a danger to any other person or to the community.

Compassionate release is appropriate on this record.

IV.  **CONCLUSION**

For the foregoing reasons, the Motion is **GRANTED**. The Court modifies Hughes's term of imprisonment to TIME SERVED, with all

20

other terms of Hughes's sentence as imposed on August 27, 2014, to remain unchanged.

SO ORDERED this  25th   day of January, 2021.


*/s/ Samuel H. Mays, Jr.*
SAMUEL H. MAYS, Jr.
UNITED STATES DISTRICT JUDGE